MARC A. PILOTIN
Regional Solicitor
JOSHUA P. FALK
Counsel for Safety and Health
DAVID H. CLARK
Senior Trial Attorney
UNITED STATES DEPARTMENT OF LABOR
909 First Avenue, Suite 230
Seattle, WA 98104
Telephone: 206-757-6749
Email: Clark.David.H@dol.gov
*Attorneys for Plaintiff Keith E. Sonderling,*
*United States Acting Secretary of Labor*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| KEITH E. SONDERLING, <br>     Acting Secretary of Labor, <br>     United States Department of Labor, <br><br>                  Plaintiff, <br>    v. <br><br> ALASKA GOLDMINE LLC; SHELDON MAIER; and JANNE MAIER, <br><br>                  Defendants. | Case No. 4:26-cv-00025-ACP |

## MOTION FOR PRELIMINARY INJUNCTION

## <u>INTRODUCTION</u>

Plaintiff Acting Secretary of Labor moves for entry of a preliminary injunction against Defendants Alaska Goldmine LLC and its owners Sheldon Maier and Janne Maier. The Acting Secretary seeks a preliminary injunction forbidding Defendants from denying the Mine Safety and Health Administration ("MSHA") entry into the Pedro Creek Mine and from allowing any miners onto the mine site until such miners have received training required under the Federal Mine Safety and Health Act ("Mine Act").

# FACTUAL BACKGROUND

## I. MSHA Discovered the Uninspected Pedro Creek Mine in 2022 and Issued Citations and a Withdrawal Order for Safety Hazards and a Lack of Miner Training.

Defendant Alaska Goldmine LLC extracts gold near Fairbanks, Alaska adjacent to mile marker 16 of the Steese Highway near Pedro Creek (the "Pedro Creek Mine" or "Mine").[1] Towne Decl. ¶4. Defendants Sheldon and Janne Maier own Alaska Goldmine LLC, Towne Decl. ¶3. As the owner and operator of Alaska Goldmine LLC, Defendant Sheldon Maier has previously refused to allow MSHA investigators onto the Mine and previously refused to comply with MSHA's order to withdraw untrained workers from the site. Towne Decl. ¶6, 9. The Acting Secretary brings this action to prevent the operation of the Pedro Creek Mine by untrained miners using uninspected equipment operated by an uninspected operator.

MSHA first became aware of this mine and the hazards it presents on August 24, 2022, via an anonymous complaint. Towne Decl. ¶9. That same day, MSHA Supervisory Inspector Jarred Towne attempted to inspect the Pedro Creek Mine and was met by Defendant Sheldon Maier. Towne Decl. ¶6. Defendant Sheldon Maier stated to the Inspector that he was mining but would not register the Mine with MSHA and denied the Inspector entry at a locked gate. Towne Decl. ¶6-7. On September 13, 2022, Inspector Towne, along with MSHA Inspector Thomas Berberich, attempted to begin an inspection but Defendant Sheldon Maier again refused to allow the inspection to proceed. Towne Decl. ¶9. Defendant Sheldon Maier has also stated that he refuses to comply with the Mine Act and any MSHA orders. Towne Decl. ¶9. Following the refusal, the Inspectors exited the mine and issued seventeen citations for obvious (plain view) hazards seen at the site. Towne Decl. ¶5-9. Inspector Towne also issued a withdrawal order directing

---

[1] Defendants have mined in at least two above-ground sites around this location. *See* Towne Decl. ¶4. However, MSHA considers these mining activities to be occurring at one mine. *Id.*

Defendants to prohibit any untrained miners from being at the Mine until they were trained as required by the Mine Act. Towne Decl. ¶9.

## II. An Injunction was Issued in 2023 by Judge Kindred to Prevent Untrained and Uninspected Mining.

From September 2022 to June 2023 MSHA Inspectors attempted to contact Defendants about the safety violations at the Pedro Creek Mine. Defendants did not respond to the multiple attempts and did not acknowledge the order to withdrawal issued to Alaska Goldmine LLC. The efforts at contact and subsequent refusals to allow inspection by Defendant Maier were detailed in Inspector Towne's 2023 Declaration in Support of Injunction. *Declaration in Support of Injunction, Su v. Alaska Goldmine LLC,* No. 4:23-CV-00019-JMK, 2023 WL 7184150, Dkt. 3, Ex. 1 at 2-4. (D. Alaska Nov. 1, 2023).

On August 18, 2023, MSHA sought a preliminary injunction prohibiting Defendants Alaska Goldmine LLC and Sheldon Maier from denying MSHA entry into the Pedro Creek Mine and from allowing any miners at the Mine until such miner had received training as required under the Mine Act. The Honorable Joshua Kindred granted the motion for a preliminary injunction on November 1, 2023, and enjoined Defendants from denying MSHA Inspectors entry to the Mine to conduct an inspection and from conducting mining operations at the mine site until Defendants complied with MSHA's Order requiring miner training. *Order Granting Motion for Preliminary Injunction, Su v. Alaska Goldmine LLC*, No. 4:23-CV-00019-JMK, 2023 WL 7184150, Dkt. 16 (D. Alaska Nov. 1, 2023).

Due to a seasonal shutdown of mining operations, MSHA postponed any inspections until the spring thaw and potential resumption of mining activities. Additionally, during this injunction period Defendants made no attempt to abate the citations or train miners. On March 26, 2024, Defendants stated that they would not be renewing their mining license and are no longer mining. Clark Decl. ¶7. On September 5, 2024, Defendants again stated in writing via email to the Acting Secretary that they are

Case 4:26-cv-00025-ACP    Document 5    Filed 04/28/26    Page 3 of 11

no longer mining. Clark Decl. ¶10. Based upon Defendants' assertions and that MSHA did not observe any violations of the preliminary injunction throughout 2024, the Parties agreed to a stipulated dismissal of the action. *Stipulation of Dismissal without Prejudice, Su v. Alaska Goldmine LLC*, No. 4:23-CV-00019-JMK, 2023 WL 7184150, Dkt. 23 (D. Alaska Nov. 1, 2023). On October 28, 2024, the Court approved the Stipulation of Dismissal. *Order Approving Stipulation of Dismissal, Su v. Alaska Goldmine LLC*, No. 4:23-CV-00019-JMK, 2023 WL 7184150, Dkt. 24 (D. Alaska Nov. 1, 2023). Defendants never rectified their previous safety violations and never paid the MSHA fines and penalties associated with that case.

## III. <u>Defendants Have Resumed Mining Without Training and are Again Refusing Inspection.</u>

Contrary to their assurances to the Acting Secretary, Defendants began mining again at Pedro Creek, most likely after the spring thaw in 2025. On September 2, 2025, MSHA observed active mining operations by Alaska Goldmine LLC at a plot of land near the location at issue in the prior case and part of the Pedro Creek Mine. This newly observed mining activity is located about one mile up the road from the mining activity that Judge Kindred's November 2023 injunction addressed but due to the portable nature of the equipment it is considered part of the same mine addressed under that injunction (the portable plant mining operation is under Federal Mine Identification Number 50-02099). Towne Decl. ¶4. While flying over the site, Inspector Towne noticed active mining equipment and several vehicles in operation at the site. He also noticed signs of fresh dug earth. Additionally, Inspector Towne took photos and videos of the equipment being operated. Towne Decl. at Ex. 1. On September 18, 2025, one of Inspector Towne's subordinate Inspectors, Robert Jones, went to Pedro Creek to confirm the mining activity that was visible from the air. No one was present for Inspector Jones to speak to, so he took photos and left business cards in the hopes that Defendants would contact MSHA. Towne Decl. at Ex. 2. After this visit, Inspector Towne received a phone call from Alaska State Trooper Riley Moss, informing him that he has been accused of criminal trespass

by Defendants and that if he returns, he will be subject to arrest.

MSHA seeks to enter and inspect the Mine, so that MSHA may comply with its Congressional mandate to complete bi-annual inspections of surface mines. Since Defendants have expressed in the past their unwillingness to permit entry, and have now engaged in a constructive denial by calling state authorities alleging criminal trespass by federal law enforcement inspectors, judicial assistance is requested to ensure access for inspection and to prevent harm to any miners at an uninspected mine site, not to mention harm to MSHA employees for attempting to conduct a lawful inspection.

## ARGUMENT

A party seeking a preliminary injunction under Federal Rule of Civil Procedure 65 "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008). As explained below, the Acting Secretary satisfies all elements required for a preliminary injunction.

**I.      The Acting Secretary is Likely to Succeed on the Merits of a Claim that Defendants Refused to Permit Inspection and Refused to Comply with a Withdrawal Order.**

This District has previously held that the Acting Secretary is likely to prevail when MSHA seeks an injunction to prevent miners from entering a mine site without proper training. *Su v. Alaska Goldmine LLC*, No. 4:23-CV-00019-JMK, 2023 WL 7184150, at *7 (D. Alaska Nov. 1, 2023). Here, the Acting Secretary seeks injunctive relief under the Mine Act because Defendants (1) refused to admit the authorized representatives of the Acting Secretary onto, and to permit the inspection of, a mine site, in violation of Section 103(a), 30 U.S.C. § 813(a); (2) interfered with, hindered, and refused to permit the Acting Secretary's representatives from carrying out the provisions of the Mine Act, in violation of Section 103(a), 30 U.S.C. § 813(a); (3) and refused to comply with Order No.

Case 4:26-cv-00025-ACP     Document 5     Filed 04/28/26     Page 5 of 11

9615288, in violation of Section 104(g)(1), 30 U.S.C. § 814(g)(1). *See* Compl. ¶ XIII; *see also* 30 U.S.C. § 818(a)(1)(A)-(D). The Acting Secretary has previously succeeded against these same Defendants for similar reasons, and under related factual circumstances. The Acting Secretary is likely to succeed in this similar claim.

### A. MSHA Has Jurisdiction Over the Mine.

The Mine Act is remedial legislation enacted by Congress to protect life, to promote health and safety, and to prevent mine accidents. 30 U.S.C. § 801; *see U.S. v. Lake,* 985 F.2d 265, 267–68 (6th Cir. 1993). The very first sentence of the Act states that "the first priority and concern of all in the coal or other mining industry must be the health and safety of its most precious resource--the miner." 30 U.S.C. § 801(a). To ensure the health and safety of miners, MSHA is required by the Act to conduct routine, mandatory inspections of every mine in the nation. 30 U.S.C. § 813(a). In order to ensure that MSHA is able to carry out its mandate, MSHA is granted "a right of entry to, upon, or through any coal or other mine." *Id.*

By excavating gold and other minerals from the earth, the Pedro Creek Mine falls squarely within the jurisdictional definition of a "mine" set forth at Section 3(h)(1) of the Mine Act. A "coal or other mine" is defined, in pertinent part, as:

> (A) an area of land from which minerals are extracted …, (B) private ways and roads appurtenant to such area, and (C) lands, excavations … structures, facilities, equipment, machines, tools, or other property … on the surface or underground, used in, or to be used in, or resulting from, the work of extracting minerals from their natural deposits, … or used in … the milling of such minerals ….

30 U.S.C. § 802(h)(1).

There is no requirement in the Mine Act that a "mine" have employees. In fact, the opposite is true; the definition of a "mine" giving rise to MSHA jurisdiction is based entirely on the nature of the operations themselves, which are defined broadly, to include extraction of mineral, such as gold, or the processing of such minerals. As noted in *Donovan v. Carolina Stalite Co.*, Congress intended "that what is to be considered to be a mine and to be regulated under this Act be given the broadest possibl[e] interpretation."

734 F.2d 1547, 1554 (D.C. Cir. 1989) (citations omitted); *Cyprus Industrial Minerals Co. v. FMSHRC*, 664 F.2d 116, 118 (9th Cir. 1981). To enable the Acting Secretary to carry out the duties mandated by the Act, Section 103(a) provides federal mine inspectors with a right of entry to conduct inspections, 30 U.S.C. §813(a). The Acting Secretary need not give advance notice of an inspection,[2] and federal mine inspectors are not required to obtain a warrant or other judicial order before conducting an inspection of mine property. 30 U.S.C. §813(a); *Donovan v. Dewey,* 452 U.S. 594, 602 (1981).

Based on the observations of Inspector Towne, the statements of Defendant Sheldon Maier that he was mining, and the Act's broad definition, the Pedro Creek Mine is a covered mine under the Mine Act. Additionally, the Defendant's activities at Pedro Creek have previously been held to fall under the jurisdiction of the Mine Act. ("According to the plain language of the statute, when a mine affects commerce, the *operator* and any miners are subject to the Mine Act.") (emphasis in original). *Su v. Alaska Goldmine LLC*, No. 4:23-CV-00019-JMK, 2023 WL 7184150, at *5 (D. Alaska Nov. 1, 2023).

**B.     Defendants Refused Access to the Mine.**

The law on denial of entry under the mandatory inspection provision of Section 103(a) of the Act is clear. Section 103(a) expressly requires that no advance notice be given an operator prior to an inspection and gives authorized representatives of the Acting Secretary an explicit right of entry of all mines for the purpose of performing inspections authorized by the Act. *Secretary of Labor, Mine Safety and Health Administration (MSHA) v. Calvin Black Enterprises*, 7 FMSHRC 1151, 1156, 1985 WL 192536, at *4. Preventing an inspector from entering a mine, or even unreasonably delaying the inspection, violates MSHA's right of entry under Section 103(a) of the Mine Act. *Secretary of Labor, Mine Safety and Health Administration (MSHA) v. John*

---

[2]     In fact, the statute prohibits anyone from giving advance notice except in limited circumstances not applicable to this case. 30 U.S.C. § 813(a).

*Richards Construction*, 39 FMSHRC 959, 964, 2017 WL 2212189, at *4–5. Defendant Sheldon Maier has displayed this behavior in the past, explicitly telling MSHA he was denying entry, which led to the previous injunction. Then, engaging in subterfuge to end the prior injunction and resume mining without complying with the Mine Act. Now, Defendants are again denying entry and access to the Pedro Creek Mines by neglecting to contact MSHA and instead using Alaska State law enforcement to block entry via an unlawful arrest.

On August 24, 2022, Defendant Sheldon Maier refused entry verbally to Inspector Towne by stating he was not allowing the Inspector up the road onto the Mine. On September 13, 2022, during the second attempt at inspecting the Mine, Defendant Sheldon Maier again refused to cooperate with MSHA. In 2024, after the Acting Secretary obtained an injunction, Defendants still failed to comply. Defendants, in lieu of inspection and training of miners, explicitly stated to the Acting Secretary's representative, in writing, that they would cease mining activity. Yet, Defendants began mining again thereafter, without notification, without inspection, and without rectifying the past cited safety hazards.

After Inspector Towne observed mining activity and Inspector Jones attempted to inspect this new mining at Pedro Creek, leaving business cards on site for Defendants, Alaska state police contacted Inspector Towne. Trooper Moss stated Defendant Sheldon Maier had contacted him about a trespass on his property, implicating Inspector Towne and Inspector Jones in a crime. Despite explaining to Trooper Moss about the Mine Act's right of entry, Trooper Moss said if MSHA attempted to inspect the Mine again, they would be subject to arrest. The attempt to use state criminal law enforcement resources to prevent MSHA from inspecting the mine is another clear denial by Defendants.

The Mine Act does not require Inspectors to force entry, nor should Inspectors have to risk state criminal prosecution to complete their statutorily required inspections. The multiple verbal refusals, the false statement to the Acting Secretary in writing, and contacting state law enforcement authorities by Defendant Sheldon Maier are each

sufficient individually, and more than sufficient collectively, to establish the refusal to MSHA of entry for the purpose of inspection by an authorized representative.

## II.  Irreparable Harm Exists Because Defendants Are Preventing MSHA From Meeting its Congressional Mandate.

The Acting Secretary easily demonstrates such harm. If injunctive relief is not granted, Defendants will have effectively prevented MSHA from meeting its Congressional mandate to complete a twice a year safety inspection of above ground mines. This creates an irreparable harm to both the miners that are present at Pedro Creek Mine, as well as MSHA, the agency, itself. *Solis v. Timber Savers, Inc.*, 2010 WL 5113066, at \*2 (D. Idaho Dec. 3, 2010) (citing cases). Additionally, the Alaska local mining community will suffer irreparable harm because they will be forced to compete with an uninspected mine that has the competitive advantage of not factoring into their costs the safety equipment and training that other registered mines require.

## III.  The Balance of Equities Strongly Favors the Acting Secretary and an Injunction is in the Public Interest.

The balance of equities tilts sharply in the Acting Secretary's favor, and a preliminary injunction is decidedly in the public interest. *Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly*, 572 F.3d 644, 657-58 (9th Cir. 2009) (the Court may consider the last two *Winter* factors together). As detailed above, the Mine Act establishes a strong public interest in federal enforcement by the Acting Secretary of the Mine Act and in protecting miners from dangerous conditions.

Defendants cannot identify any harm in complying with their obligations under the Mine Act. In *Kutsey*, the court noted, "the laudable purposes of the [Mine] Act outweigh whatever harm may come to the defendant through this injunctive relief." 731 F.Supp. at 710. So too here, where the provisions of the Mine Act, and the Acting Secretary's enforcement of the Act, are critical to the safety and health of miners and the public interest at large, and no harm in fact will result to Defendants from the injunctive relief sought.  The balance of equities thus clearly weighs in the Acting Secretary's favor. Past

Courts within this District have agreed with this conclusion. *Su v. Alaska Goldmine LLC,* No. 4:23-CV-00019-JMK, 2023 WL 7184150, at *8 (D. Alaska Nov. 1, 2023). ("Specifically, treating all mine operators equally favors granting the preliminary injunction. Permitting Defendants to continue operating without the same regulatory oversight that other operators experience puts Defendants at an unfair competitive advantage.").

## **CONCLUSION**

For the foregoing reasons, the Acting Secretary of Labor moves this Court for a preliminary injunction preventing Defendants from denying MSHA entry into the Pedro Creek Mine and from allowing any miners onto the mine site until such miners have received training required under the Mine Act. The Acting Secretary seeks an injunction stating that mine inspectors conducting a lawful mine inspection is not a violation of state trespass laws. The Acting Secretary also seeks an order declaring that, under the Mine Act, MSHA inspectors are authorized to enter the Pedro Creek Mine. Defendants have made it clear that they will not cooperate willingly and without court intervention. The injunctive relief sought herein is necessary to enjoin Defendants from harassing, intimidating, or threatening MSHA inspectors assigned to inspect the Mine.

The Acting Secretary requests an expedited hearing so that MSHA may comply with their Congressional mandate to complete bi-annual inspections of surface mines.

Respectfully submitted,

Dated: April 28, 2026

JONATHAN BERRY
Solicitor of Labor

MARC A. PILOTIN
Regional Solicitor

JOSHUA FALK
Counsel for Safety and Health

/s/ *David H. Clark*
DAVID H. CLARK
Senior Trial Attorney

*Attorneys for Plaintiff Keith E. Sonderling,*
*United States Acting Secretary of Labor*